Please be seated. This morning we have five cases before this panel. Three will be orally argued. Two have been submitted in the record. For purposes of the record, I will read the names of the cases that are being submitted on a briefs. First one is 2009-3167 Wadah v. Veterans Administration. Second one is also 2009-3169 Wadah v. Veterans Administration. First case to be orally argued is 2008-5074 Barnick v. U.S. Mr. Flaunt, you reserve five minutes for rebuttal. That's correct. You may proceed. If the court please. I represent Lieutenant Colonel Ronald Barnick concerning his illegal discharge and physical disability case. The essence of this case... As I understand it in 1998, he was not asserting that he should be retained in the military. His position was that he should be retired for disability and that he should receive disability compensation. He wasn't seeking to remain in the reserves, was he? Well, he was in this way. First of all, the illegality stems from the misconduct finding. I don't think you're answering my question. He was not seeking to remain in the active reserves in 1998. His position was I should be retired for disability. His position was that he should be evaluated for that. He was seeking disability retirement. That's what he thought he was entitled to. He did think that he was entitled to that. At no point did he claim that he should have been retained in the military and that he was not disabled, right? No, he was claiming that, Your Honor. He was claiming that he was not disabled? No, he was claiming that he was disabled by his civilian medical records at the time. Okay, so he was not claiming that he should remain in the military because he was not disabled, right? He was claiming, no, he was because of the following reasons. He was claiming that he should be treated like anyone else and that would extend his time in the military service way past 25 January of 1998. Are you talking about the incapacitation pay? I'm talking about, yes, incapacitation pay, constructive active service. That wasn't what he was seeking. He wasn't seeking to remain in the military. He agreed that he had a physical condition that made him unfit for military service, correct? I wouldn't go that far. Why not? Because he needed to be evaluated at that time and in fact, right now, under the status of this case, it's a 10% disability. I understand there's a dispute about the extent of the disability and what the disability compensation, but he was not claiming, as I read the record in 1998, that he should have remained in the active reserve. No, he was claiming that. I beg to differ with you because the reason I mentioned 10% is that even at 10%, the Air Force could find something for him to do. In other words, he was a reservist at that time and he did not ask to be retired or discharged from the service. He did ask to be retired. Well, he was forced to do that. Well, but he said, I do this, but subject to my rights to claim disability compensation. Well, he did it after he was retired. The first time, he didn't fill out the form. He simply wrote on it. The second time, then the Air Force wrote to him and said, you must take an election. And then he did that. And there is court of claims and federal circuit precedent concerning the fact that a person can be forced into a retirement or a discharge and that does not make it legal. And the basis for the Air Force's action was the not in line of duty misconduct finding for which there was no evidence. So, in other words, because of that finding of misconduct, the Air Force wrote to him and said, we are discharging you for physical disqualification and you are not entitled to any benefits because of the misconduct finding. And he objected to that and said, no, I'm entitled to a hearing. No, he objected to more than that. He objected to the whole process where he was being discharged without first having a full and fair hearing. But the full and fair hearing, he said, was necessary because it would show that he was entitled to disability benefits. Well, it would show something. We don't know at this point what it would show. He would have appeared before a military evaluation board and a physical disability board and then we would have before us that record. But that was never done. And that takes some time to do also, Your Honor. So that January 25th of 1998 was an illegal discharge and an arbitrary date. But was there anything in the record that really attested to the fact that but for the NLOD he would have been retained? Yes. His assertions, but beyond that, is there anything else in the record to show that? There are the regulations. Is there any evidence to show that? There is his affidavits that are uncontested. Beyond his own assertions? Is there anything that the Air Force stated or otherwise? Well, I would say that that is found right in the document in October of 1997 that he was sent saying we are discharging you for physical disqualification. And it says right in that document that the reason this is happening has nothing to do with your incapacitation found in line of duty, in duty. But on page 210 of the record where he files this application for transfer to the retired reserve, the objection that he makes at that point is that I should be getting a disability retirement pension, not that I should be retained in the active reserve. Well, that is, both are saying the same thing. In other words, if he hasn't been evaluated he remains in the same status that he was in at the time. So that request is for both. In other words, to remain in the status that he was in until such time as these and a lawful discharge takes place and the evaluation takes place that is lawful. They are inextricably linked. The misconduct finding, his being forced to retire against his will, as shown by what he wrote in his own hand on those documents. Where does he say that I should have been retained in the active reserve? Because I was physically competent. I was physically fit. Where did he say that at the time? Well, I don't think he ever said that he was physically fit. Okay, so he agreed that he was not physically fit in 1988. Well, I can't make that determination. Did he ever contend that he was physically fit in 1998? I think he was physically fit enough to go before an evaluation board. What do you think? What did he say? That's what he says. Where does he say that he was physically fit? Well, I call your attention to those documents. Just what documents? Well, the discharge documents themselves. Where does he say he was physically fit? Well, I don't think he says it in so many words. He says that he is fit enough to appear before a board for determination as to what his physical situation is. I mean, an MEB and a PEB can find that a person is fit for duty, unfit for duty by a certain percentage, put them on temporary disability for evaluation in the future. All of that. A full and fair MEB and a full and fair PEB can do that. So by his requesting that he have those boards, he is saying, keep me in the same status that I'm in until such time as these determinations are made. And those were never made. Contrary to what it appears from reading Judge Firestone's opinion, where she says that this determination was made in 1998. It wasn't. It was made years after the fact, going back to the date of 1998. And I would respectfully draw the court's attention to the Clackam case, which is on point because I sense that what you're getting at, Your Honor, is that he could have been discharged anyway on January 25th of 1998. And Clackam is on point concerning the illegality of the discharge in this case in pointing out that just because the Air Force could have done something on a certain date doesn't mean that now, after the illegality is pointed out, that the Air Force can continue with the same date. Your problem is that every single one of these constructive active duty cases involve situations where the service member was claiming that he should have been retained in the active military. Every single one of them. Correct? That's correct. That's correct. And it is raised after the fact. And my client is saying the same thing. That back in March of 94, when he was in the military, he was on active duty. And that he could have been and should have been, with his consent, retained on active duty. And he was not. And instead he had the status that he did, at which time three years later or so, after the not in line of duty determination had been made, and without my client knowing the basis for it, he was discharged, retired January 25th of 98, and then in May of 98, he finds out the basis for the not in line of duty misconduct finding, after filing a Freedom of Information Act request and an appeal. Has your client received the six month incapacitation pay that appears to be provided by 204G? Yes. He is provided with more than that. And that provision says that the secretary has discretion to and here my client received the incapacitation pay from 1994 to 1998. A number of periods of six months. And the basis for that of course, was that that would be fair and equitable under the circumstances and the secretary did award that pay. But you see, given that January of 98 is an illegal discharge date, that is the beginning of the analysis, not the end. Once that date is illegal, found to be illegal, it is a nullity under the law. It is void under the law. It's as if it never happened under Groves. Mr. Vaughn, I have one question with regard to the correction of military records. The military records were corrected, but the NOLD was still left on the record. How is that prejudicial? Your Honor, that taints my client's records. It is prejudicial to him now because all of that information is still in the records instead of having been corrected, amended, or expunged. And I would draw the court's attention respectfully to the Cushman case decided by this court in August, just six weeks or so ago, where I was in this administration case. The court found that his records had been tainted because there were altered documents in the record. Well, there were altered documents, but they were never corrected. In this particular case, they were corrected. Well, Your Honor, all that was done to correct it was one piece of paper that was added to his file saying that now instead of not in line of duty due to his own misconduct, it is now in line of duty. That was it. Is that a public record that is available to everyone, or is it just available within the service community? I don't believe so. I think my client has Privacy Act restrictions. I guess we're trying to figure out if there's prejudice. Well, there is because if my client, for instance, were to go to the Veterans Administration, it would be right there. All those documents finding him not in line of duty are in that record. But then there is a document correcting him in that same file. But all the prejudicial information is still in the record. Why? How is that going to affect the Veterans Administration and their deliverance of money? Because the Veterans Administration also can make a line of duty determination and is required to do so under law. I don't understand. It's already been made in this case and corrected. Well, it's been made and corrected in this case, but the documents are still there, and the Veterans Administration can make its own independent judgment in that regard. Even with the corrected record in front of them? I believe so, yes. I don't understand how that could be. Well, all the prejudicial information is there, and no one should see it. It was done behind my client's back without his knowledge in any way. No signed statements of witnesses. My client didn't find out about it until months after the fact and after he'd been retired from the service. That is clearly illegal. And simply putting into the record one page that says his records are corrected and leaving in there dozens, if not hundreds, of other pages saying something different is wrong. And I would point out to the court that in 2007, the medical advisor to the board goes over these documents, mentions in as late as 2007 the medical advisor to the board, who did not see my client face-to-face, and is reviewing the records, points out several things that are wrong in his analysis, and states therein that he too read these documents pertaining to not in line of duty due to all misconduct, and goes so far as to say that my client's discharge on January 25th of 1998 was due to expiration of a length of service in the military, which is totally not in the record anywhere. He was discharged on January 25th because he had been forced to sign paperwork electing one option over another, and he did so. And the basis for that paperwork was the not in line of duty due to his own misconduct determination, in which time he was said you were eligible for no benefits because of the misconduct determination. Thank you, Mr. Fontenot. Well into your rebuttal time. We'll have three minutes of rebuttal time. Mr. Rodriguez? Good morning, your honors. May it please the court. Will you start with this little correction issue since we were just talking about it? Yes, your honor. The correction of the records issue? Yes. I think that the court identified something that my friend on the other side was not willing to concede, but the fact is  The record is not in line of duty. The fact is that Mr. Barnack's record, unlike some of the cases cited in brief, is a record that is not going to be reviewed for a promotion. It's not going to be reviewed in any way where he can point to a prejudicial effect. And I think as Judge Moore identified Well he suggested that the VA would make its own separate determination if they could possibly look at this record and then if they saw all these documents it might prejudice them in their decision. Is that correct? Because I don't understand the procedures. Does the VA make its own line of duty or not line of duty determination when deciding benefits? I do not know the specific answer to that. I know that was something that came up in oral argument. And again, I think we mentioned in our brief where Mr. Barnack had not sought review from the Veterans Administration. But there's nothing to suggest that the VA would ignore the findings of the Air Force Corrections Board. You're not on good footing with that one. I mean we've had MSPB cases where similar things have happened. An employee has been fired because of some misconduct on his part. Action is brought to us and we say no it was improper or the MSPB says no it was improper. Reinstate the employee or worse, he'll settle the case as long as the record is changed to reflect a voluntary resignation. And then they come in and try and add a very line at the bottom, voluntary resignation. Well that employment record I mean who do you want to show that to? Of course it's prejudicial. Even if it's later corrected, it is prejudicial. If you are accused of doing something bad, even if you were vindicated, what do people remember? The fact that you were accused. So you're on very shaky ground to tell me at least that the correction at the end sufficiently avoids any prejudice. So why don't you go back to whether or not the record is accessible because that seems to me the only way you can successfully establish a lack of prejudice. Yes, Your Honor. The record is protected by the Privacy Act. It's not a public record. It's not a public record but what if he were to seek another job and the employer wanted to see his military records. Is that something that could be accessed? If Mr. Varnick signed the Privacy Act waiver and provided a copy to someone, then certainly that would take it out of the realm of being contained. But the entire record would be available to the future employer, would it not? If Mr. Varnick signed the Privacy Act waiver allowing. If he signed it, hypothetically if he signed it, the entire record would be available. I believe it would be. Future employer. I believe it would be if he signs a Privacy Act waiver allowing access to an employer to the board's records. The entire record would be available including that portion which is incorrect. The portion that would show that there would be an initial finding of not in the line of duty due to his own misconduct subsequently corrected. Yes, all of that would be in the record. So what would it take to essentially expunge that portion of the record by the military court? Did this court order that? We believe that the question of under 28 U.S.C. 1491 A.2, the Court of Federal Claims is limited in its ability for equitable relief such as taking the action of expunging a record or something like that. That's not incident or collateral to money damages. You're saying that we don't have the authority to tell the lower court to instruct the board to expunge the record? We do not believe that that is within the court's authority absent a money judgment incident to a collateral to a money judgment under 1491 A.2. Well there was a money judgment here though, right? I mean there was, was he paid $117,000 and all of that was, there was a money judgment in this case, wasn't there? Well there wasn't a money judgment by the court. The Air Force Board of Correctional Military Records during the pendency of this litigation paid Mr. Barnack incapacitation pay in the amount of $117,600. So everything came prior to the Court of Federal Claims decision? That was not part of the Court of Federal Claims decision. So you think that if the Court of Federal Claims doesn't actually award dollars that they can't then order the correction of the military record? The board could order, the court could order correction of military records incident and collateral to a money damage. And there's a case that I think is cited in brief, VOGE, the Vogue case on page 781 which indicates that 28 USC 1491 A only permits correction of records incident to or collateral to money damages. What would be the harm to the military of expunging the record? Is there some reason that the original action needs to be preserved in the record here? Candidly, your honor, the record is kept the way that it has been because these are the way that the events happen. And unlike some of these other cases where review boards or promotion boards would see this and the negative information could be prejudicial, I think in the Yee case which is cited in brief. In this case no one is ever going to see this record. If these items were expunged I don't think there would be... My question is what would the adverse effect be on military record keeping if the record were expunged? Is there some adverse consequence to that? I don't believe there would be in this case. I'm sorry, what was this case that you cited to me a minute ago? I think you said VOG case. V-E-V-O-G-E. Is it in your brief? It is in Mr. Barnett's brief. So you didn't raise the issue of the trial court or our court lacking the jurisdiction to... I realize the jurisdictional issue is something that can be raised at any time, but in your brief you don't anywhere argue that we don't have the authority to make this? No, we didn't argue that, your honor. But now you are. I'm just making sure I understand. You're now saying that we do not have the authority to order the correction of the record. In response to your question, I believe, we believe that 28 U.S.C. 1491A limits the court's ability to grant equitable relief such as correction of records that are not incident to a collateral, to a money judgment. Why are you fighting this? Why don't you just correct the record? Your honor, the record was corrected. Why don't you just expunge it? Why are you fighting about this? You say there's no adverse effect from expunging it or correct the problem. Why just do it? I'm trying to explain why it wasn't done. Could it be done? Would it affect the Air Force Board of Correction and Military Records if it was ordered? Assuming that this court could order that, would that be something we would object to? No, your honor. We could expunge the record. Again, the key points of this case have nothing to do with the record. Why doesn't the government do it without having to be ordered to do it? Because ordinarily, correction board records are not expunged. Ordinarily, they are kept in the way that the records are made because subsequent correction boards may have to look at the entire record. But here, the corrections that Mr. Barnett wanted was made. He was found in the line of duty effective. The correction wasn't made. That's why he's appealing the issue. That's why he brought it up below. That's why he brought it up now. Are you not hearing his arguments? So you can't stand here and say the correction he wanted was made because certainly the correction he wanted was not. Well, the specific aspect of the correction, expunging of the records, if that's the only thing that he had an issue with, certainly we don't believe that that could have been something done without a money judgment. But again, I think as Judge Dyke pointed out, it's not really the major point of this particular case. Why don't you just agree to do it? Why don't you agree to do it right now? You said there's no harm to the government. Why can't you right now just agree that his record will be expunged? Well, you would make three judges really happy. I don't have the authority to agree to do that. The only thing I could agree to is something that I will bring up to the agency and perhaps it will do it. But you're representing the agency, so why don't you have the authority to represent them and commit them to something? You do have the authority to commit them. You're committing them to legal positions on various issues right now. But why don't you just go back and check and write us a letter? We'll do, Your Honor. Before you sit down, one other issue, and that has to do with this medical examination that was submitted to the Court of Federal Claims and not submitted to the Court of Federal Claims. I'm not familiar with our recent decision in Walls. We are, Your Honor, and we actually submitted a 28-J letter for this Court's consideration of the Walls case because we believe it applies here as well. Do we have to decide the question of whether this medical record could be considered by the Court of Federal Claims? I guess this has to do with the question of whether the 10% disability rating is correct. Yes, Your Honor. Has there been any explanation in the record why this medical evidence wasn't submitted to the Corrections Board? No, Your Honor. The medical record was the Mr. Jandrich, Dr. Jandrich's letter was prepared in August of 2007, which was long after the third BCMR decision. Judge Firestone below determined not to admit it because it was something that had not been brought up before the Board. Again, she cited to the Mets case. Subsequent to that, this Court decided Walls, which adds even more support for this Court's not considering this post-Corrections Board evidence. But she could have sent it back to the Board for consideration at that point. That would have been an option open to the Court, yes. That's one of the items that was decided in the Wall, wasn't it? In the Wall's case, the question was whether I think in that case was remanded, but the Court determined that wasn't ordinarily the case. Here you have a situation where but for, this opinion was written but for the sole purpose of this litigation. It was written in August of 2007. It could have been presented at any of the three BC Corrections Board cases, but instead it was held back and presented after the litigation for litigation purposes. There's no reason why the Court should have accepted it and there's no reason why the Court should have remanded it. I guess what we were concerned about in Walls is that there seemed to be somewhat of a conflict between Brown and Mets and other cases. The law was pretty unclear as to whether you had to submit it originally to the Corrections Board or not. So why shouldn't we do the same thing we did in Walls and that is suggest that you have another crack at submitting this to the Corrections Board. We believe that remand isn't appropriate because in this case the Court found specifically that the Corrections Board's decision was substantially justified by the evidence before it. It was not arbitrary or It wasn't complete. It might have reached a different decision if it had this other evidence. Well, it was complete, Your Honor. It was complete in the sense that everything that had been properly during this case, as Judge Firestone noted, there were arguments back and forth. In December, I believe in December 2006, one of Mr. Barnack's complaints at oral argument was that the medical records were incomplete. So Judge Firestone gave him time to supplement the medical records and to explain to her what were those missing records and Mr. Barnack presented four pages that dealt with the back injury, which was already amply in the record. It did not contain any of this information concerning the carpal tunnel syndrome. The reasons set forth in our brief and the reasons here, we ask that the Court confirm the trial court's decision. Thank you. Would you send us a letter within two weeks as to whether or not the agency would be considering expunging the record? We will, Your Honor. Thank you very much. Mr. Fong? You have three minutes. First, I'd like to address something raised by the Court earlier concerning constructive service and an apparent view that somehow my client was required at the time to ask to go on active duty in order to be able to now argue before this Court successfully that the constructive service doctrine applies. And I would point out that that is in essence what the government argues in their brief as distinguishing Groves from my client's case and that is not a distinction as I point out in my reply brief. I was a counsel in Groves and I recall that in Groves all that happened there was that my client was in the same status as was Lieutenant Colonel Barney and he was discharged. Once he was discharged illegally, he then filed before the Court of Claims, U.S. Court of Federal Claims. And that is what has happened here. My client was discharged illegally and then he has come before this Court and said that he comes within the constructive service doctrine. And there is no distinction. Lastly, I would point out on that issue that the regulations are very clear that line of duty determination should be made quickly within seven days. And there can even be an interim line of duty determination made. So all this massive delay from March of 94 until my client receives notice in October of 97 that he is going to be retired on the basis of physical disqualification, not having to do with injuries that occurred in service based upon the not in line of duty for misconduct determination, that all of that delay is attributable not to Mr. Barney but to the Air Force. So I respectfully submit to you that 25 January of 98 is the beginning of the analysis in this case, not the end. Not the end date. That in this case the analysis should be that beginning on 25 January of 98, what is my client entitled to in going forward until a discharge date which is lawful. The only discharge date on the horizon is May 5th of 2003 when my client was discharged. And I argue in my brief why it is that that discharge too is illegal and in fact period 4 applies in this case as pointed out in my brief concerning periods 1, 2, 3 and 4. I'm sorry, is my time up? Thank you Mr. Farn. Case is submitted. Thank you.